Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| ROBERTO QUIÑONES RIVERA<br><br>RECURRIDO<br><br>v.<br><br>VÍCTOR MALDONADO VÁZQUEZ, YAMIL O´NEILL MONTALVO, YAZMÍN CORDERO MORALES Y OTROS<br><br>PETICIONARIOS<br><br>v.<br><br>ESTADO LIBRE ASOCIADO DE PUERTO RICO, DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN<br><br>Demandado | TA2025CE00058 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm. BY2024CV06732<br><br>Sobre:<br><br>DAÑOS |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio, el Juez Rodríguez Flores.

Pagán Ocasio, juez ponente

## SENTENCIA

En San Juan, Puerto Rico, a 24 de julio de 2025.

### I.

El 23 de junio de 2025, el Procurador General, en representación del señor Víctor Maldonado Vázquez, el señor O'Neill Montalvo y la señora Yasmín Cordero (en conjunto, peticionarios), presentó digitalmente un recurso de *Certiorari* en el que solicitó que revoquemos la *Resolución* emitida el 7 de mayo de 2025 por el Tribunal de Primera Instancia, Sala Superior de Bayamón (TPI o foro primario).[1] Mediante dicho dictamen, el TPI declaró No Ha Lugar la *Moción de desestimación* presentada por los peticionarios. En desacuerdo, el 22 de mayo de 2025, los peticionarios presentaron

---

[1] Véase la Entrada Núm. 43 del expediente digital del caso en el Sistema Unificado de Manejo y Administración de Caso (SUMAC) del TPI.

una *Moción de reconsideración.*[2] Al día siguiente, el TPI la declaró No Ha Lugar.[3]

El 2 de julio de 2025, emitimos una *Resolución* en la que le condecimos al señor Roberto Quiñones Rivera (señor Quiñones Rivera o recurrido) hasta el 14 de julio de 2025 para mostrar causa por la que no debíamos expedir el auto de *certiorari* y revocar la *Resolución* recurrida.

El 11 de julio de 2025, el recurrido presentó una *Oposición a certiorari.* Solicitó que se deniegue la expedición del *certiorari* y que se ordene la continuación de los procedimientos.

Con el beneficio de la comparecencia de las partes, damos por perfeccionado el recurso. En adelante, pormenorizamos los hechos procesales pertinentes a la atención de la petición de *certiorari.*

**II.**

El caso de marras tuvo su génesis cuando el señor Quiñones Rivera, quien está bajo la custodia del Departamento de Corrección y Rehabilitación (DCR) presentó, por derecho propio, una *Demanda* sobre daños y perjuicios en contra de los peticionarios y de otras funcionarios de la institución correccional, todos en su carácter personal.[4] Allí, alegó que la parte demandada, entre ésta los peticionarios, llevó a cabo una serie de actos culposos y/o negligentes y/o intencionales, encaminados a provocarle daños al recurrido, consistentes en darle de baja de su trabajo en un área de la institución correccional e impedirle participar en otras áreas de trabajo. Esto, mediante alegado maltrato psicológico, información falsa y engaños.

En particular, adujo que los peticionarios se han desprendido de sus capacidades y deberes como empleados del DCR para la

---

[2] Véase la Entrada Núm. 49 del expediente digital del caso en SUMAC-TPI.
[3] Véase la Entrada Núm. 50 del expediente digital del caso en SUMAC-TPI.
[4] Véase la Entrada Núm. 1 del expediente digital del caso en SUMAC-TPI. Fue ponchada como recibida en la Secretaria del TPI el 6 de noviembre de 2024 y registrada digitalmente el 8 de noviembre de 2024.

rehabilitación moral y social del recurrido, actuando bajo motivaciones propias y personales infundadas, y en claro menosprecio y odio contra éste, asignando a otros confinados a brigadas en el exterior y rechazándole a él la oportunidad sin justificación alguna. Asimismo, alegó que, los peticionarios han creado plazas de trabajo absurdas e inexistentes para ofrecérselas al recurrido con el fin de justificar que le han ofrecido oportunidades de trabajo.

El 11 de noviembre de 2024, el TPI emitió una *Orden* en la que determinó que, en virtud de las alegaciones de la *Demanda*, este no podía representarse por derecho propio, por lo que le requirió comparecer con representación legal al pleito.[5]

Posteriormente, el 8 de enero de 2025, el recurrido presentó una *Demanda Enmendada*, en esta ocasión representado por abogado, para añadir al Estado Libre Asociado de Puerto Rico, y al DCR como parte demandada y excluir a varios demandados, manteniendo a los peticionarios, ahora en su carácter oficial y personal.[6]

El 19 de marzo de 2025, el Estado Libre Asociado de Puerto Rico, por sí y en representación del DCR presentó una *Contestación a demanda* en la que estableció sus defensas afirmativas.[7]

Por su parte, el 14 de abril de 2025, los peticionarios presentaron una *Moción de desestimación*.[8] En síntesis, alegaron que los programas de trabajo en la institución correccional dependen de unos requisitos, protocolos y reglamentos en donde éstos como supervisores de las áreas de la institución no toman una determinación. Asimismo, adujeron que estos se encargan de referir el asunto a las oficinas correspondientes para que allí se evalúe la

---

[5] Véase la Entrada Núm. 7 del expediente digital del caso en SUMAC-TPI.
[6] Véase la Entrada Núm. 12 del expediente digital del caso en SUMAC-TPI.
[7] Véase la Entrada Núm. 33 del expediente digital del caso en SUMAC-TPI.
[8] Véase la Entrada Núm. 40 del expediente digital del caso en SUMAC-TPI.

concesión del trabajo. Arguyeron que el recurrido omitió mencionar en la demanda cómo estos funcionarios pueden intervenir intencionalmente en la decisión administrativa sobre los programas de trabajo. Estos señalaron que las determinaciones de elegibilidad se realizan en el carácter oficial de los funcionarios, dependiendo mayormente de la posición, mediando análisis y determinaciones discrecionales. Por ello, argumentaron que les aplica la doctrina de inmunidad cualificada y que, por ende, el recurrido no tiene derecho que amerite la concesión de un remedio en la reclamación en contra de los peticionarios en su carácter personal.

El 5 de mayo de 2025, el recurrido presentó una *Oposición a solicitud de desestimación por funcionarios en su carácter personal*.[9] Alegó que de su reclamo surge con suficiente particularidad la violación a derechos constitucionales y civiles en su contra. Adujo que los peticionarios, en su carácter personal, solidariamente, violaron sus derechos constitucionales y civiles al cesarlo de su trabajo en la ropería y negarle la oportunidad de trabajo en las brigadas externas y en el taller de tablillas. Este arguyó que, bajo el reglamento, los peticionarios, personalmente como encargados de su área administrativa, son los que vienen obligados a contestar al remedio y es el evaluador quien notifica la respuesta del remedio al confinado. Además, argumentó que la asignación de trabajos es un asunto rutinario en la institución correccional por lo que no les es aplicable a los peticionarios la doctrina de inmunidad cualificada.

El 7 de mayo de 2025, el TPI emitió una *Resolución* en la que declaró No Ha Lugar la solicitud de desestimación.[10]

---

[9] Véase la Entrada Núm. 42 del expediente digital del caso en SUMAC-TPI.
[10] Véase la Entrada Núm. 43 del expediente digital del caso en SUMAC-TPI.

En desacuerdo, el 22 de mayo de 2025, los peticionarios presentaron una *Moción de reconsideración[11],* y el 23 de mayo de 2025, el TPI la declaró No Ha Lugar.[12]

Insatisfechos, los peticionarios presentaron el presente recurso de *certiorari* e en el que formularon el siguiente señalamiento de error:

> Erró el Honorable Tribunal de Primera Instancia al denegar la Moción de Desestimación presentada por los peticionarios al amparo de la Regla 10.2(5) de Procedimiento Civil, *supra,* aun cuando de los hechos alegados en la Demanda Enmendada se desprende diáfanamente que el señor Quiñones Rivera incumple con el estándar de plausibilidad aplicable y carece de remedio alguno contra los funcionarios en su carácter personal a la luz de la doctrina de inmunidad condicionada.

Los peticionarios alegaron que no hay fundamentos en la reclamación del recurrido para acumularlos como demandados, en su carácter personal. Adujeron que los actos que éstos realizaron y que alegadamente le causaron daños al recurrido fueron realizados en sus funciones oficiales. Alegaron que, en su posición de supervisores de la institución, no intervienen directamente en las determinaciones de elegibilidad dado a que están sujetos a un proceso administrativo independiente. Por ello, argumentaron que les aplica la doctrina de inmunidad cualificada.

Por su parte, el 11 de julio de 2025, el recurrido presentó una *Oposición a certiorari* en la que, en resumen, arguyó que la asignación y remoción de trabajo a un confinado es un asunto rutinario en la institución correccional que queda fuera del alcance de la inmunidad condicionada. Alegó que de las alegaciones de la demanda surge el reclamo de daños por violaciones a derechos constitucionales y civiles del recurrido y que los peticionarios responden por sus actos ilegales e inconstitucionales.

---

[11] Véase la Entrada Núm. 49 del expediente digital del caso en SUMAC-TPI.
[12] Véase la Entrada Núm. 50 del expediente digital del caso en SUMAC-TPI.

**III.**

**A.**

El auto de *certiorari* es un remedio procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. ***Medina Nazario v. McNeil Healthcare LLC***, 194 DPR 723, 728 (2016). Es en esencia un recurso extraordinario por el cual se solicita a un tribunal de mayor jerarquía la corrección de un error cometido por el tribunal inferior. supra, pág. 729. Una característica distintiva del auto de *certiorari* es que se asienta en la discreción delegada al tribunal revisor para autorizar su expedición y adjudicación. ***IG Builders et al. v. BBVAPR***, 185 DPR 307, 338 (2012). No obstante, nuestra discreción debe ejercerse de manera razonable, y siempre procurar lograr una solución justa. ***Torres Martínez v. Torres Ghigliotty***, 175 DPR 83, 98 (2008).

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, establece las instancias en las que el foro revisor posee autoridad para expedir el auto de certiorari sobre materia civil.[13] ***Scotiabank de Puerto Rico v. ZAF Corporation, et als.***, 202 DPR 478 (2019). A su vez, dicha regla sufrió varios cambios fundamentales encaminados a evitar la revisión judicial de aquellas órdenes o

---

[13] Esta Regla dispone que:

[....]

El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios (sic), anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.

Cualquier otra resolución u orden interlocutoria expedida por el Tribunal de Primera Instancia podrá ser revisada en el recurso de apelación que se interponga contra la sentencia sujeto a lo dispuesto en la Regla 50 sobre los errores no perjudiciales.

resoluciones que dilataban innecesariamente el proceso pues pueden esperar a ser revisadas una vez culminado el mismo, uniendo su revisión al recurso de apelación. ***Medina Nazario v. McNeill Healthcare LLC,*** *supra.* En esa línea, el rol de este foro al atender recursos de *certiorari* descansa en la premisa de que es el foro de instancia quien está en mejor posición para resolver controversias interlocutorias y con el cuidado que debemos ejercer para no interrumpir injustificadamente el curso ordinario de los pleitos que se están ventilando en ese foro. ***Torres Martínez v. Torres Ghigliotty***, 175 DPR 83, 98 (2008).

Si el asunto comprendido en el recurso de *certiorari* está en una de las instancias establecidas en la Regla 52.1 de Procedimiento Civil, *supra*, entonces este foro ejerce un segundo escrutinio. Este se particulariza por la discreción que se le ha sido conferida al Tribunal de Apelaciones para expedir, autorizar y adjudicar en sus méritos el caso. Para poder ejercer de manera razonable y prudente la facultad discrecional concedida, la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, R. 40, establece los criterios que debemos tener ante nuestra consideración al atender una solicitud de expedición de un auto de *certiorari*.[14]

**B.**

La Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2, enumera los supuestos en los cuales una parte puede solicitar la desestimación de una acción en su contra. Entre ellos, "dejar de

---

[14] Esta Regla dispone lo siguiente:
El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

exponer una reclamación que justifique la concesión de un remedio".[15] *López García v. López García*, 200 DPR 50 (2018). El Tribunal Supremo de Puerto Rico ha establecido que, al momento de considerar una moción de desestimación, los tribunales están obligados a tomar como ciertos todos los hechos bien alegados en la demanda y, a su vez, considerarlos de la forma más favorable a la parte demandante. Íd. Por ello, para que proceda una moción de desestimación, "tiene que **demostrarse de forma certera en ella que el demandante no tiene derecho a remedio alguno bajo cualquier estado de derecho que se pudiere probar en apoyo a su reclamación**, aun interpretando la demanda lo más liberalmente a su favor". Íd., citando *Rivera Sanfeliz v. Jta. Dir. FirstBank*, 193 DPR 38, 49 (2015) (Énfasis nuestro). Es decir, al resolverse una moción de desestimación por este fundamento, el tribunal tomará como ciertos todos los hechos bien alegados en la demanda y que hayan sido aseverados de manera clara y concluyente, y que de su faz no den margen a dudas. *Autoridad de Tierras v. Moreno Ruiz Dev. Corp.,* 174 DPR 409, 428 (2008).

### C.

El Art. 1536 del Código Civil de 2020, 31 LPRA sec. 10801, establece que: "[l]a persona que por culpa o negligencia causa daño a otra, viene obligada a repararlo". Ahora bien, como excepción a esta norma, el Art. 1540 del Código Civil de 2020, supra sec. 10805, instituye la responsabilidad vicaria, según la cual ciertos tipos de personas naturales o jurídicas responden por las acciones de sus dependientes. Entre estas, el inciso (d) del referido Artículo preceptúa que responden "los patronos públicos o privados, por los daños que causan sus empleados en el servicio de las ramas en que los tengan empleados o con ocasión de sus funciones". Íd. Conforme a esta disposición se reconoce la doctrina de responsabilidad vicaria.

---

[15] 32 LPRA Ap. V, R. 10.2 (5).

En ese sentido, el Estado responderá por los perjuicios que causen sus empleados en el ejercicio de sus funciones. *Valle v. E.L.A.*, 157 DPR 1, 15 (2002).

La responsabilidad vicaria del Estado está restringida y limitada por la Ley Núm. 104 de 29 de junio de 1955, según enmendada, conocida como *Ley de Reclamaciones y Demandas contra el Estado* (Ley Núm. 104). 32 LPRA sec. 3077-3092a. Conforme a la citada ley, el Estado renunció parcialmente a su inmunidad debido a que a través de dicho estatuto permitió ser demandado cuando sus agentes o empleados "por descuido, negligencia o falta de circunspección" ocasionen daños. "En esencia, la Asamblea Legislativa autorizó la presentación de demandas contra el Estado por las actuaciones culposas o negligentes de sus empleados, funcionarios o agentes en el desempeño de sus funciones y actuando en capacidad oficial". *Valle v. E.L.A.*, supra, pág. 16. A su vez, autoriza demandas apoyadas en la Constitución, en cualquier ley o reglamento de Puerto Rico, o en algún contrato con el Estado. Íd. Ahora bien, la parte demandante deberá cumplir con los requisitos que establece dicha disposición y probar los elementos que establece nuestro ordenamiento jurídico para que su causa de acción pueda prosperar. Íd., pág. 17.

Los funcionarios públicos gozan de una "inmunidad condicionada" que opera como una limitación de responsabilidad civil en el descargo de sus deberes y responsabilidades oficiales. *Romero Arroyo v. E.L.A.*, 127 DPR 724, 745 (1991). Esta es una defensa afirmativa que puede ser levantada por el funcionario, agente o empleado demandado. Íd. La inmunidad de los funcionarios públicos no se deriva de la inmunidad del soberano. Íd. Por el contrario, se encuentra cimentada en consideraciones de política pública. Íd. El efecto de la inmunidad condicionada es eximir de responsabilidad civil al funcionario en su carácter personal, pero

dejando intacta la responsabilidad y la renuncia del Estado a su inmunidad conforme a las disposiciones de la Ley Núm. 104. Íd., pág. 746.

Empero, la inmunidad condicionada de un funcionario público no es absoluta. ***Acevedo v. Srio. Servicios Sociales,*** 112 DPR 256, 262 (1982). A tenor con el Art. 6 de la Ley Núm. 104, la ley no autoriza las demandas contra el Estado predicadas en los actos de sus empleados, agentes o funcionarios en las siguientes circunstancias:

(a) En el cumplimiento de una ley o reglamento, aun cuando éstos resultaren ser nulos.
(b) En el desempeño de una función de carácter discrecional, aun cuando hubiere abuso de discreción.
(c) [...]
(d) Constitutivo de acometimiento, agresión u otro delito contra la persona, encarcelación ilegal, arresto ilegal, persecución maliciosa, calumnia, libelo, difamación y falsa representación e impostura.
(e) [...]
(f) [...]
(g) [...][16]

En los casos que surgen en esas circunstancias, de ordinario, solo responden los agentes, empleados o funcionarios en su carácter personal. ***Leyva et al. v. Aristud et al.***, 132 DPR 489, 497, nota al calce núm. 4 (1993); Cfr. ***Galarza Soto v. E.L.A.***, 109 DPR 179 (1979). Cónsono con lo anterior, el funcionario responde en su carácter personal si en el descargo de sus funciones no actuó de buena fe, incurrió en una conducta ilegal o en algún acto delictivo o intencional. ***Acevedo v. Srio. Servicios Sociales***, supra, pág. 262. De no mediar alguna de las excepciones pormenorizadas, los funcionarios públicos están protegidos de acciones civiles sobre daños y perjuicios en su carácter personal.

**IV.**

En el caso de marras, TPI rechazó desestimar la *Demanda enmendada* presentada por el recurrido en contra de los peticionarios, en sus capacidades personales.

---

[16] 32 LPRA sec. 3081 (d).

Los peticionarios alegaron que erró el TPI en su determinación al declarar No Ha Lugar la *Moción de desestimación* porque la causa de acción en contra de éstos, <u>en su carácter personal</u>, no procede en virtud de la doctrina de inmunidad cualificada o condicionada. Arguyeron que los programas de trabajo en la institución correccional dependen de una serie de requisitos, protocolos y reglamentos a nivel administrativo. Así, adujeron que el único tramite que ellos como supervisores realizan es referir y no dilucidar la concesión o no del trabajo. Por ello, manifestaron que el TPI debía auscultar si la demanda exponía alegaciones suficientes en contra de los peticionarios en su carácter personal. Además, sostuvieron que el reclamo del recurrido omite exponer cómo los peticionarios pudieron ejercer deliberada e intencionalmente las decisiones administrativas de negarle trabajo en las brigadas exteriores.

Por su parte, el recurrido arguyó que la asignación de trabajo son asuntos rutinarios en la institución y que, por ello, no les aplica a los peticionarios la doctrina de inmunidad cualificada. Además, adujo que los peticionarios cometieron actos ilegales e inconstitucionales en su contra por los cuales le son responsables.

Tras un análisis objetivo, sereno y cuidadoso del expediente del caso y de los argumentos esbozados por las partes, en correcta práctica adjudicativa apelativa, resolvemos que el TPI cometió el error señalado. La *Demanda enmendada* no aduce una reclamación que justifique la concesión de un remedio por parte de los peticionarios, <u>en su carácter personal</u>, pues no surgen alegaciones, que, tomadas como ciertas, demuestren una conducta ilegal o intencional por parte de los peticionarios en contra del recurrido con relación a los programas de trabajo de la institución correccional. En consecuencia, procede la desestimación de la demanda contra de estos, **en su carácter personal**.

Conforme al derecho antes pormenorizado, los funcionarios públicos pueden levantar como defensa la inmunidad cualificada cuando ejercen de forma razonable y de buena fe funciones oficiales que contienen un elemento de discreción. Esta opera como una limitación sustantiva de la responsabilidad personal por daños en que estos puedan incurrir en el descargo de sus deberes y responsabilidades oficiales. ***Romero Arroyo v. E.L.A.,*** supra, pág. 745.

En lo pertinente al asunto de marras, el *Reglamento de Actividades y Nuevas Oportunidades de Rehabilitación y Tratamiento*, Reglamento Núm. 9497 de 11 de septiembre de 2023 (Reglamento Núm. 9497), fue creado con el objetivo de preservar el orden y la seguridad en la participación de los miembros de la población correccional en las actividades, dentro y fuera de las instituciones correccionales. Dicho reglamento comprende las normas relacionadas a la participación en los programas de teatro correccional, bandas musicales, deportistas de alto rendimiento, brigadas y el artesanal.

Particularmente, el Capítulo X sobre Programas de Rehabilitación establece los criterios generales de elegibilidad para los programas de trabajo. Una vez cumplidos, es el Comité de Clasificación y Tratamiento quien se encarga de recomendar a los miembros de la población correccional para participar en los diversos programas. Véase, Inciso A, Capitulo X del Reglamento Núm. 9497, supra, pág. 30-34.

Similarmente, el Capitulo XI dispone que el personal designado de la Oficina de Programas y Servicios Regional será quien solicitará a las áreas sociopenales concernientes, los candidatos para las vacantes de trabajo en los programas de brigadas. Véase, Inciso A (2), Capitulo XI del Reglamento Núm. 9497, *supra*, págs. 43. También, el Reglamento establece que, una

vez evaluados, los candidatos serán enviados nuevamente a los Técnicos de Servicios Sociopenales, para que estos presenten al Comité de Clasificación y Tratamiento o al cuerpo sucesor, los casos autorizados para ser asignados oficialmente. Asimismo, menciona que el Comité de Clasificación y Tratamiento se encargará de evaluar los aspectos de sentencia, delito, historial de adicción, riesgos, tratamiento, escolaridad y problemas de salud para presentar sus recomendaciones. Íd., Inciso A (3).

En el caso de marras, los peticionarios no forman parte del Comité de Clasificación y Tratamiento. Por ello, no son las personas encargadas de determinar la elegibilidad para los trabajos de rehabilitación en la institución. En consecuencia, como supervisores, no responden en su capacidad personal por determinaciones discrecionales que no ejercen ante este escenario.

Conviene señalar que, un panel hermano de este mismo Tribunal de Apelaciones resolvió en el caso ***González Rivera v. Montañez y otros***, KLCE202100832, sobre una controversia idéntica a la presente en términos de capacidad personal, que no existían alegaciones en la demanda que permitieran concluir que la parte peticionaria haya actuado fuera del marco discrecional, de mala fe o de forma ilegal en el ejercicio de sus funciones. Por tal razón, se revocó el dictamen emitido por el foro primario en el que declaró No Ha Lugar a la moción de desestimación presentada por los demandados, funcionarios públicos, y se ordenó la desestimación de la causa de acción en su contra en su capacidad personal.

Otro panel hermano de este Tribunal de Apelaciones, en el caso ***Ponce Morales v. López y otros***, KLAN202400027, confirmó la sentencia parcial emitida por el foro primario mediante la cual se desestimó la causa de acción incoada en contra de varios funcionarios públicos, en cuanto a sus capacidades personales.

Similarmente, este tribunal concluyó que las alegaciones de la demanda en contra de las capacidades personales de los codemandados no adujeron hechos demostrativos para sostener la causa de acción.

En virtud de lo antes expuesto, determinamos que la *Demanda enmendada* en el caso de marras no logró establecer hechos demostrativos para sostener una demanda en contra de las capacidades personales de los peticionarios. Dichas alegaciones no han demostrado hechos para vencer la defensa de inmunidad cualificada que pueden levantar los peticionarios como funcionarios públicos. No hay alegaciones de que éstos hayan actuado fuera del marco discrecional, de mala fe o de forma criminal o ilegal en el ejercicio de sus funciones.

Por lo tanto, concluimos que el TPI incidió en el error señalado por la parte peticionaria. En consecuencia, se revoca la *Resolución* recurrida y se ordena la desestimación de la demanda incoada en contra de los peticionarios **en su capacidad personal**.

**V.**

Por los fundamentos anteriormente pormenorizados, se expide el auto de *certiorari* y se revoca la *Resolución* recurrida. Se devuelve el caso ante el foro recurrido para la continuación de los procedimientos conforme a lo aquí resuelto.

Lo acordó el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones